UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR S.,<br><br>         Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>         Defendant. | Case No.:  18cv1152-AJB(RBB)<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 10, 12]** |

On June 3, 2018, Plaintiff Oscar S. commenced this action against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for social security benefits [ECF No. 1]. Defendant filed an Answer and the Administrative Record on August 2, 2018 [ECF Nos. 7, 8].

On December 10, 2018, Plaintiff filed a Motion for Summary Judgment and/or Remand [ECF No. 10].  The Commissioner filed a Cross-Motion for Summary Judgment and an opposition to Plaintiff's motion for summary judgment on January 10, 2019 [ECF Nos. 12, 13].  On January 25, 2019, Plaintiff filed a reply [ECF No. 14].  Defendant filed a surreply on January 29, 2019 [ECF No. 15].

The Court has taken the motions under submission without oral argument [ECF No. 11]. For the following reasons, the Court recommends that Plaintiff's motion for summary judgment and/or remand be **DENIED** and Defendant's cross-motion for summary judgment be **GRANTED**.

## I.    BACKGROUND

On November 21 and 25, 2014, Plaintiff Oscar S. filed applications for disability insurance benefits and for supplemental security income benefits under Titles II and XVI of the Social Security Act, respectively. (Admin. R. at 215-30, ECF No. 8.)[1] In both applications, Plaintiff alleged that he has been disabled since May 1, 2013 due to human immunodeficiency virus ("HIV"), depression, high blood pressure, anxiety, psychotic behavior, mood disorder, and paranoia. (Id. at 215, 222, 255.) His applications were denied on initial review and again on reconsideration. (Id. at 123-27, 129-33, 137-41, 143-47.)

On December 1, 2016, Oscar S. appeared with his attorney at a hearing before Administrative Law Judge ("ALJ") Mary French. (Id. at 38.) Plaintiff testified that he last worked in 2012 as a part-time banquet server at the Sacramento Convention Center. (Id. at 42.) He had not worked since May 1, 2013, his onset date, due to depression and anxiety. (Id. at 44.) He stated that medications have helped his conditions. (Id. at 45, 46.) Because of his anxiety, he felt self-conscious and avoided going out in public and working with people. (Id. at 46.) Oscar S. stated that on "good days," he was "functional," but on "bad days," which occurred two to three times per week, he felt very tired and did not "want to do anything." (Id. at 47.) He did not believe he could work as a server because of his problems with focusing and remembering. (Id.) When asked if his HIV diagnosis affected his ability to work, he testified, "Yeah, I'm being honest, I

---

[1] The administrative record is filed on the Court's docket as multiple attachments. The Court will cite to the administrative record using the page references contained on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court cites to the page numbers affixed by CM/ECF.

don't think it does. . . . I don't think it's the HIV virus.  Maybe it is, but I think for me, it's more of a mental.  I don't know. . . . [¶]  It's the depression and stuff." (Id. at 48.) Side effects from his medications included tiredness and occasional diarrhea.  (Id. at 49-50.)  He did not believe his substance abuse, including his drinking, affected his ability to work.  (Id. at 50-51.)  Plaintiff stated his daily routine consisted of taking care of household chores and visiting neighbors and friends.  (Id. at 55-56.)  He no longer owned a car and used his bicycle for transportation.  (Id. at 56.)  He stated that he used a computer to check email and "go on Facebook."  (Id. at 57.)

The ALJ posed the following hypothetical question to vocational expert ("VE") David Dettmer at the hearing:

> [I]f you took a hypothetical individual with the same age, education and work experience as the claimant and further assume the individual could lift up to 50 pounds occasionally, and 25 pounds frequently, could stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday.  The individual would be able to understand, remember and carry out simple tasks and instructions.  Could not work with the general public, could work in the presence of coworkers but not closely with them as part of a team, and would need to be in a workplace with few changes.  Could this person do the claimant's past work?

(Id. at 57-58.)  The VE responded that such a person could not work as a waiter, but could work as a stock clerk, hand packager, and kitchen helper.  (Id. at 58.)  The VE testified further that an individual who was "off task" fifteen percent of the workday at entry level employment, or absent from work three days per month, would not be employable.  (Id. at 58-59.)

On May 24, 2017, the ALJ issued a decision finding that Oscar S. had not been under a disability, as defined in the Social Security Act, from his alleged onset date through the date of the decision.  (Id. at 16-32.)  ALJ French stated that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014.  (Id. at 18.) She also determined that Plaintiff had not engaged in substantial gainful activity since May 1, 2013, the alleged onset date.  (Id.)  Oscar S.'s severe impairments included HIV

3

positive status, hepatitis A, hepatitis B, anxiety disorder, depressive disorder, obsessive-compulsive disorder, and substance use disorder.  (Id. at 18.)  The ALJ found that, singly or in combination, Plaintiff did not have impairments that met or medically equaled a listing.  (Id. at 19.)  She further determined that Oscar S. had the residual functional capacity to perform medium work, and could lift or carry fifty pounds occasionally and twenty-five pounds frequently; could stand, walk, or sit for about six hours in an eight-hour workday; could understand, remember, and carry out simple tasks and instructions; could not work with the general public; could work in the presence of coworkers but not closely with them as part of a team; and would need to be in a workplace with few changes.  (Id. at 22.)  The ALJ concluded that Plaintiff could not perform his past relevant work as a banquet waiter, but that jobs existed in significant numbers in the national economy that he could perform, including in the representative occupations of stock clerk, hand packager, and kitchen helper.  (Id. at 30-32.)

On June 6, 2017, Plaintiff requested that the Appeals Council reconsider the decision of the administrative law judge.  (Id. at 211-13.)  On March 30, 2018, the Office of Disability Adjudication and Review notified Oscar S. that the Appeals Council had denied his request for review.  (Id. at 1-6.)

## II.    STANDARD OF REVIEW

Sections 405(g) and 421(d) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C.A. §§ 405(g), 421(d) (West 2011).  The scope of judicial review is limited, however, and the denial of benefits "'will be disturbed only if it is not supported by substantial evidence or is based on legal error.'"  Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)); see also Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).  Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews

v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions.  Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

The district court may affirm, modify, or reverse the Commissioner's decision.  42 U.S.C.A. § 405(g).  The matter may also be remanded to the Social Security Administration for further proceedings.  Id.

## III.    DISCUSSION

**A.    Legal Standard**

To qualify for disability benefits under the Social Security Act, an applicant must show two things:  (1) He or she suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  See 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (West 2016).  An applicant must meet both requirements to be classified as "disabled."  Id.  The applicant bears the burden of proving he or she was either permanently disabled or subject to a condition which became so severe as to disable the applicant prior to the date upon which his or her disability insured status expired.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

The Commissioner makes this assessment by employing a five-step analysis outlined in 20 C.F.R. § 404.1520 (2018).  See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps).  First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  Second, the Commissioner determines whether the claimant has a "severe impairment or combination of impairments" that significantly limits the claimant's physical or mental ability to do basic work activities.  If not, the

claimant is not disabled.  Id. § 404.1520(c).  Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded.  Id. § 404.1520(d).  If not, the claimant's residual functional capacity is assessed and the evaluation proceeds to step four.  Id. § 404.1520(e).  Fourth, the Commissioner determines whether the claimant can do his past relevant work.  If the claimant can do his past work, benefits are denied.  Id. § 404.1520(f).  If the claimant cannot perform her past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  Id. § 404.1520(g).  If the Commissioner meets this burden and proves that the claimant is able to perform other work that exists in the national economy, benefits are denied.  Id.

## B. Plaintiff's Claim

Plaintiff argues that the ALJ erred by reducing the weight of the opinions of his treating physicians, Paolo V. Troia-Cancio, M.D. and Louis Kraft, M.D. without presenting valid reasons for the reductions.  (Pl.'s Mot. and Mem. Supp. Summ. J. and Remand ["Pl.'s Mot. Summ. J."] 11-14, ECF No. 10.)

### 1. Dr. Troia-Cancio

Oscar S.'s treating physician, Dr. Paolo V. Troia-Cancio, completed a physician statement in December 2014 in which he indicated that Plaintiff appeared "chronically ill" and "visibly fatigued" due to HIV, depression, and medications.  (Admin. R. at 283-84.)  With respect to Plaintiff's ability to sustain a forty-hour workweek, Dr. Troia-Cancio found Oscar S. had no lifting or carrying restrictions, could stand and walk for eight hours, and must periodically alternate sitting and standing.  (Id. at 283.)  Regarding Plaintiff's functional level, the treating physician noted that Plaintiff had "[c]hronic low energy, thought to be secondary to medication side effects."  (Id.)  Dr. Troia-Cancio stated that Oscar S.'s limitations had been present since 2013.  (Id.)  The only objective

findings referenced by Dr. Troia-Cancio in this opinion are laboratory findings confirming Plaintiff's HIV positive status. (Id. at 284.)

The ALJ stated the following about this medical opinion:

Dr. Troia-Cancio is a treating physician and generally, a treating physician's opinion is given more weight because it is more likely to be based on a detailed, longitudinal picture of the claimant's impairments. However, although Dr. Troia-Cancio opined that the claimant can stand and[/]or walk for eight hours, the other limitations are vague and non-specific. In addition, this opinion is internally inconsistent with Dr. Troia-Cancio's notation that the claimant appears chronically ill and visibly fatigued. In addition, the claimant himself stated that his HIV positive status did not prevent work. [Citation omitted.] For these reasons, this opinion by Dr. Troia-Cancio is given reduced weight.

(Id. at 25.)

Dr. Troia-Cancio also completed a Physical Residual Functional Capacity Questionnaire on Oscar S.'s behalf in July 2016. (Id. at 510-14.) He noted that he saw Plaintiff four to five times per year, and that his prognosis was "fair." (Id. at 510.) Plaintiff's symptoms included difficulty concentrating, inability to focus, diarrhea caused by HIV medications, nervousness, anxiety, and poor impulse control. (Id.) Dr. Troia-Cancio noted that lab testing had confirmed Oscar S.'s HIV status, and psychiatry had verified his depression and anxiety. (Id.) He stated, "Patient has cognitive impairment related to his HIV disease as well as his psychiatric medical problems." (Id.) The treating physician opined that Plaintiff's symptoms were severe enough to constantly interfere with the attention and concentration needed to perform even simple work tasks during a typical workday. (Id. at 511.) Dr. Troia-Cancio found Plaintiff was incapable of performing even "low stress" jobs due to his inability to concentrate or focus. (Id.) Oscar S. was capable of sitting, standing, or walking at least six hours out of an eight-hour workday, but would need a break every fifteen to thirty minutes. (Id. at 512.) Dr. Troia-Cancio reduced Plaintiff's lift and carry capacity to ten pounds frequently,

twenty pounds occasionally, and fifty pounds rarely. (Id.) He estimated Plaintiff would miss work more than four days per month. (Id. at 513.) He also stated that Plaintiff's limitations dated back to 2013, and that drugs or alcohol contributed to his symptoms. (Id. at 514.)

With respect to this opinion, the ALJ explained:

> As noted above, a treating physician's opinion is generally given more weight because it is more likely to be based on a detailed, longitudinal picture of the claimant's impairments, and at the time of this opinion, Dr. Troia-Cancio had a treatment history with the claimant. However, this opinion by Dr. Troia-Cancio is inconsistent with the record as a whole, and it also appears that Dr. Troia-Cancio relied heavily on the claimant's subjective complaints with minimal objective findings to support the limitations given. In addition, Dr. Troia-Cancio provided non-exertional limitations based on the claimant's mental health; however, Dr. Troia-Cancio is not a mental health specialist. Further, as noted above, these limitations are inconsistent with the claimant's statements to his treating psychiatrist in July 2016 that he is no longer taking psychiatric mediations and is no longer experiencing depression or paranoia. In addition, the claimant stated that his HIV positive status did not prevent work. [Citation omitted.] For these reasons, the majority of Dr. Troia-Cancio's opinion is given reduced weight.
>
> However, Dr. Troia-Cancio's opinion that the claimant can sit for at least six hours in an eight hour day and can stand and[/]or walk for at least six hours in an eight hour day, is consistent with the record as a whole and is given great weight.

(Id. at 26.)

Oscar S. argues that the ALJ improperly found that Dr. Troia-Cancio's opinion was internally inconsistent and inconsistent with the record as a whole. (Pl.'s Mot. Summ. J. 12, ECF No. 10.) Plaintiff contends that Dr. Troia-Cancio's opinion was not inconsistent with the record as a whole because even though Plaintiff did attest to believing his HIV did not affect his ability to work, he also testified that his HIV medication caused him fatigue. (Id.) Oscar S. also argues that there was no internal inconsistency in Dr. Troia-Cancio's opinion because the ALJ did not adequately explain

how the doctor's statement that Plaintiff looked chronically ill and fatigued was inconsistent with the finding that he could stand or walk for eight hours and must alternate between sitting and standing.  (Id.)  He contends that these statements are not mutually exclusive and that Dr. Troia-Cancio accounted for Plaintiff's illness or fatigue by noting that he would be absent from work four days per month.  (Id. at 12-13.) Plaintiff concludes that had the ALJ given proper weight to Dr. Troia-Cancio's opinion, he would have been found to be unemployable as he would not be able to meet attendance standards.  (Id. at 14.)

Defendant argues that while the ALJ properly rejected both Dr. Troia-Cancio's 2014 and 2016 opinions, because Oscar S. only provides substantive argument about Dr. Troia-Cancio's 2014 opinion, he has waived any issue concerning the doctor's 2016 opinion.  (Def.'s Cross-Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ["Def.'s Cross-Mot. Summ. J."] Attach. #1 Mem. Supp. 4, ECF No. 12.)  With respect to the 2014 opinion, Defendant observes that the ALJ reasonably found the functional limitations set forth by Dr. Troia-Cancio were "vague and non-specific," and thus properly gave reduced weight to this opinion.  (Id.)  Defendant notes that the treating physician left blank a question concerning how often and for how long Oscar S. must alternate sitting and standing, and wrote only cursory responses in response to questions about the objective findings supporting Plaintiff's limitations ("Lab confirmed HIV infection.  Depression/anxiety") and his functional level ("Chronic low energy, thought to be secondary to medication side effects").  (Id. at 4-5 [citing Admin. R. at 283-84].)  Defendant further contends that in giving reduced weight to Dr. Troia-Cancio's opinion, the ALJ properly relied on Plaintiff's testimony that his HIV did not prevent him from working.  (Id. at 5.) Regarding Dr. Troia-Cancio's 2016 opinion, Defendant argues that the ALJ properly found the restrictions set forth therein to be inconsistent with other evidence in the record, and properly considered that Dr. Troia-Cancio was not a mental health specialist. (Id. at 6-7.)

The standard for determining whether an ALJ properly rejected the opinion of a treating physician varies. If the treating doctor's opinion is not contradicted by another physician, the ALJ must give clear and convincing reasons for rejecting it. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). On the other hand, if the treating physician's opinion is contradicted, "the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician.'" Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (quoting Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). An ALJ may discredit opinions "that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." Batson, 359 F.3d at 1195 (citing Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)). Generally, more weight is given to the opinions of treating physicians because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2) (2018).[2] However, if a treating physician's opinion is not supported by the record, it may be disregarded. Batson, 359 F.3d at 1195. See also Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (holding that "the opinion of the treating physician is not necessarily conclusive as to either the physician condition or the ultimate issue of disability.").

As an initial matter, the Court addresses Defendant's contention that Oscar S. has limited his argument to Dr. Troia-Cancio's 2014 opinion and that he has waived any

---

[2] For claims filed on or after March 27, 2017, adjudicators will no longer give any specific evidentiary weight, including controlling weight, to any medical opinions. 20 C.F.R. § 404.1520c(a) (2018). Instead, the adjudicator will evaluate the persuasiveness of the medical opinion using factors including supportability, consistency, relationship with the claimant, and specialization. Id. § 404.1520c(c). For claims filed before March 27, 2017, including Plaintiff's claim, the rules in section 404.1527 apply. Id. § 404.1527.

argument regarding the doctor's 2016 opinion. Although it is correct that Plaintiff focuses his argument on the 2014 opinion, Plaintiff does include the 2016 opinion in his discussion of the medical evidence. (Pl.'s Mot. Summ. J. 4-5, ECF No. 10.) He also relies on the 2016 opinion that Plaintiff would be absent from work four days per month in arguing that giving proper weight to Dr. Troia-Cancio's opinion would result in a finding that he is not employable. (Id. at 12-13, 14.) Therefore, the Court finds that Plaintiff has not waived argument regarding the 2016 opinion and will therefore discuss both Dr. Troia-Cancio's 2014 and 2016 opinions.

Dr. Troia-Cancio determined that Plaintiff's ability to work was impacted by "chronic low energy" (2014 opinion) and cognitive impairments due to HIV and psychiatric medical problems (2016 opinion). These opinions were contradicted by two examining physicians. Dr. Satish Sharma, board certified in internal medicine, conducted an examination of Plaintiff in February 2015 and found that he was not physically disabled. (Admin. R. at 499-504.) She opined that he was capable of lifting twenty-five pounds frequently and fifty pounds occasionally, standing or walking six hours of an eight-hour day, and working with no sitting limitations. (Id. at 499, 503.) Oscar S. insisted to Dr. Sharma that his problems were mental, not physical. (Id. at 499-500.) Dr. Sharma deferred to an appropriate specialist to evaluate Plaintiff's anxiety, depression, and paranoia. (Id. at 503.) Dr. Bradley Daigle, board certified in psychiatry, examined Plaintiff in February 2015 and found that he had at most slight limitations in his mental functional capacity, and had a moderate limitation only in his ability to adapt to the stresses common to a normal work environment. (Id. at 490, 494-95.) Dr. Daigle also observed that after the loss of his partner two years before, Plaintiff "developed symptoms of grief with anxiety and depression . . . but in the last year or more he has been receiving appropriate psychotherapy and psychopharmacologic treatment and his depression and anxiety are largely relieved to the point where he is actively seeking reemployment." (Id. at 494.) Because Dr. Troia-Cancio's opinions were contradicted by medical evidence in the record, the ALJ must provide specific and legitimate reasons

supported by substantial evidence in order to discount or reject his opinions.  See Batson, 359 F.3d at 1195; Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

In providing specific and legitimate reasons to reject a treating physician's opinion, an ALJ should set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Garrison, 759 F.3d at 1012 (quotations and citation omitted).  The ALJ did so here.  With respect to Plaintiff's physical impairments, the ALJ summarized and interpreted the medical records and opinions of Plaintiff's treating physician, Dr. Troia-Cancio, the consultative examiner, Dr. Sharma, and two state agency medical consultants, Maria Rehrig, M.D., and G. Williams, M.D.  (Admin. R. at 23, 25-27.)  The ALJ noted that Oscar S.'s HIV had mostly been asymptomatic and he had not been diagnosed with AIDS.  (Id. at 23.)  Plaintiff had regular follow-ups for his condition and tolerated his HIV medication well.  (Id.)  ALJ French also correctly observed that Plaintiff had a gap in his treatment with Dr. Troia-Cancio and did not make any interval care visits between July 2015 and February 2016.  (Id.; see also id. at 547.)  Despite this, his HIV remained "well-controlled."  (Id. at 23, 547.)  The ALJ found that Dr. Sharma's opinion regarding Plaintiff's physical condition, other than the lack of a sitting limitation, was consistent with the record as a whole, and gave it significant weight.  (Id.)

The ALJ gave great weight to the opinions of Drs. Rehrig and Williams, whose opinions essentially mirrored that of Dr. Sharma's, except they included a six-hour per day sitting limitation with normal breaks.  (Id. at 26-27; see also id. at 73-74, 97-98.)  Opinions of nonexamining medical advisors may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.  Morgan, 169 F.3d at 600 (citing Andrews, 53 F.3d at 1041).  In addition to reviewing Plaintiff's medical evidence, ALJ French also examined Oscar S.'s work history.  Although Oscar S. had worked after his alleged onset date, this work was not performed at "substantial gainful activity levels."  (Admin. R. at 23.)  Nonetheless, the ALJ determined that such

work, which included cleaning houses, and applying for ten to fifteen jobs per week, was inconsistent with Plaintiff's claim of being disabled.  (Id. [citing id. at 491, 556].)

The ALJ attributed reduced weight to Dr. Troia-Cancio's 2014 opinion because it contained vague and non-specific limitations, was internally inconsistent, and was inconsistent with Plaintiff's testimony.  (Id. at 25.)  The ALJ could properly find Dr. Troia-Cancio's 2014 opinion was vague and non-specific because the only physical limitations he articulated were that Plaintiff needed to alternate sitting and standing (but did not indicate how often) and that Plaintiff had chronic low energy.  (Id. at 283.)  He did not set forth any objective findings, other than those regarding Plaintiff's HIV status, to support his findings.  (Id. at 284.)  An ALJ may discredit opinions "that are conclusory, brief, and unsupported by . . . objective medical findings."  Batson, 359 F.3d at 1195.  Therefore, the ALJ's first reason for discounting Dr. Troia-Cancio's 2014 opinion was specific and legitimate.  The ALJ also properly found that Dr. Troia-Cancio's opinion was internally inconsistent.  The doctor's statement that Oscar S. appeared chronically ill and visibly fatigued, and that he had chronic low energy, conflicted with his finding that Plaintiff had no limitations with lifting, carrying, standing, or walking.  (Admin. R. at 283.)  Internal inconsistencies within a medical opinion may constitute a "specific and legitimate" reason to give a physician's opinion reduced weight.  See Norris v. Colvin, 160 F. Supp. 3d 1251, 1270 (E.D. Wash. 2016).  The ALJ also discounted Dr. Troia-Cancio's 2014 opinion because he determined it was inconsistent with Plaintiff's testimony that his HIV status did not prevent him from working.  (Admin. R. at 25.)  This did not constitute a specific and legitimate reason to discount this opinion, because although Plaintiff did testify that he did not believe his inability to work was due to his HIV condition, he also testified that his medications caused tiredness.  (See id. at 45, 48-49.)  Nonetheless, notwithstanding her improper reliance upon one aspect of Oscar S.'s testimony, the ALJ articulated sufficient specific and legitimate reasons to give Dr. Troia-Cancio's 2014 opinion reduced weight.

The Court turns to Dr. Troia-Cancio's 2016 opinion. The ALJ's first reason for discounting this opinion was that it was inconsistent with the record as a whole. (Id. at 26.) As discussed above, Dr. Troia-Cancio's opinion conflicted with those of Dr. Sharma, Dr. Rehrig, and Dr. Williams regarding Plaintiff's functional limitations. "When there is conflicting medical evidence, the [Commissioner] must determine credibility and resolve the conflict." Matney, 981 F.2d at 1019 (citation omitted). The ALJ's determination that Dr. Troia-Cancio's opinion was inconsistent with other medical evidence in the record constitutes a specific and legitimate reason to discount his opinion. See Batson, 359 F.3d at 1195 (providing that an ALJ may give lesser weight to a physician's opinions that are not supported by the record as a whole); see also Orn, 495 F.3d at 631 (stating that if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," it should not be given controlling weight). Next, the ALJ stated that Dr. Troia-Cancio's opinion relied heavily on Plaintiff's subjective complaints with minimal objective findings to support the limitations given. (Admin. R. at 26.) "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the state agency or Social Security Administration] will give that opinion." See 20 C.F.R. § 404.1527(c)(3). See also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Thus, the ALJ could reasonably rely on the lack of objective evidence to discount Dr. Troia-Cancio's opinion. The ALJ also found that Dr. Troia-Cancio's opinion provided non-exertional limitations based on Plaintiff's mental health, even though Dr. Troia-Cancio is not a mental health specialist nor did he treat Plaintiff for his mental health conditions. (Admin. R. at 26.) The opinions of a specialist about medical issues related to his or her area of specialization are given more weight than the opinions of a nonspecialist. 20 C.F.R. § 404.1527(c)(5); see also Bunnell v. Sullivan, 912 F.2d 1149, 1153 (9th Cir. 1990) (ascribing greater weight to the opinion of a

specialist than a general practitioner).  Therefore, this constituted a proper basis upon which to give reduced weight to Dr. Troia-Cancio's opinion regarding Plaintiff's mental limitations.

The remaining two reasons articulated by the ALJ for giving Dr. Troia-Cancio's 2016 opinion reduced weight are not specific and legitimate reasons supported by substantial evidence in the record.  The ALJ found that the limitations set forth by Dr. Troia-Cancio were inconsistent with Oscar S.'s statements to his treating psychiatrist in July 2016 that he was no longer taking psychiatric medications and was no longer experiencing depression or paranoia. (Admin. R. at 26.)  This finding ignores that just over a month later, Plaintiff reported increased depression to his treating psychiatrist and asked to be placed back on medication.  (Id. at 565.)  Additionally, as set forth above, Plaintiff's testimony that his HIV positive status did not preclude him from working is not a specific and legitimate reason to discount Dr. Troia-Cancio's opinion, because Plaintiff also testified that his medications caused tiredness and that this impacted his ability to work.  (See id. at 45, 47-49.)

Although not all of the reasons set forth by the ALJ were legitimate, the Court concludes the ALJ articulated sufficient specific and legitimate reasons supported by substantial evidence in the record to discount Dr. Troia-Cancio's 2014 and 2016 opinions.

### 2. Dr. Kraft

Oscar S.'s treating psychiatrist, Dr. Kraft, completed a Mental Residual Functional Capacity Questionnaire regarding Plaintiff in May 2015.  (Id. at 579-83.)  Dr. Kraft first saw Plaintiff in July 2013 and had seen him on thirteen occasions at the time he completed the questionnaire.  (Id. at 579.)  Dr. Kraft's diagnoses included mood and anxiety disorders, history of alcohol and methamphetamine abuse, HIV positive, hypertension, and dyslipidemia.  (Id.)  Plaintiff's prognosis was guarded.  (Id.)  Dr. Kraft found Plaintiff had serious limitations with many of the mental abilities and aptitudes

needed to perform work and was unable to meet many competitive standards needed to perform unskilled work.  (Id. at 581.)  The treating psychiatrist wrote:

> Patient has shown repetitive inability to attend regularly scheduled appointments, has difficulty modulating affect, behavior, and speech patterns (even in calm and quiet environment with minimal distractions), has paranoid ideations with belief others around him are looking at him, talking about him and may want to harm him, has psychomotor agitation which limits his ability to stay seated and calm for extended periods.

(Id.)  Dr. Kraft opined that Oscar S.'s impairments would cause him to be absent from work more than four days per month and were reasonably consistent with Oscar S.'s symptoms and functional limitations.  (Id. at 583.)

ALJ French stated the following about Dr. Kraft's opinion:

> Generally, a treating physician's opinion is given more weight because it is more likely to be based on a detailed, longitudinal picture of the claimant's impairments.  However, although Dr. Kraft had an almost two-year history with the claimant at the time he completed this form, he also indicated that he only saw the claimant 13 times during this almost two-year period, which would be less than once per month.  In addition, Dr. Kraft's opinion is inconsistent with the record as a whole, as well as internally inconsistent. As noted above, although the claimant testified that he does not like to go out or be in large crowds, he has also reported that he does not have any problems getting along with others, and talks with neighbors and friends on a daily basis, which is inconsistent with Dr. Kraft's opinion that the claimant is unable to meet competitive standards in the ability to work in coordination with others, get along with coworkers or peers, interact appropriately with the general public, or maintain socially appropriate behavior.  For these reasons, this opinion by Dr. Kraft is given reduced weight.

(Id. at 27.)

In July 2016, Dr. Kraft completed a second Mental Residual Functional Capacity Questionnaire.  (Id. at 515-19.)  Dr. Kraft noted that he had seen Plaintiff once every one to three months between July 2013 and July 2015, but had only seen him once in the past year on July 27, 2016, the day he completed the questionnaire.  (Id. at 515.)  Oscar S.'s diagnoses included anxiety not otherwise specified, mood disorder with psychosis, and

alcohol and methamphetamine abuse.  (Id.)  Dr. Kraft noted that Plaintiff was "currently on no psych meds and declines any psych meds today."  (Id.)  Oscar S.'s current signs and symptoms included generalized persistent anxiety, difficulty thinking or concentrating, substance dependence, and sleep disturbance.  (Id. at 516.)  Dr. Kraft also noted Plaintiff's history of other signs and symptoms:  mood disturbance, paranoid thinking or inappropriate suspiciousness, sub-threshold hypomanic symptoms, hallucinations or delusions, pressures of speech, and decreased need for sleep.  (Id.)  The treating psychiatrist noted that Oscar S. continued to have serious limitations with many of the mental abilities and aptitudes needed to perform work but was not precluded from functioning in these areas.  (Id. at 517-18.)  Dr. Kraft explained, "[D]ecreased concentration and anger dysregulation dealing with co-workers limits patient's ability to maintain ongoing work.  In past, restlessness and pressured speech with hypomanic [symptoms] have decreased ability to stay focused on work activities effectively."  (Id. at 518.)  The doctor also opined that Plaintiff was seriously limited in his ability to interact appropriate with the general public and maintain socially acceptable behavior.  (Id.)  He expected Oscar S. to miss about three days per month due to his impairments.  (Id. at 519.)

> The ALJ stated the following regarding this opinion:

> As noted above, although Dr. Kraft is a treating physician, the majority of this opinion is inconsistent with the record as well as internally inconsistent. In addition, at the time Dr. Kraft completed this form, he had not seen the claimant for a period of about one year, and had only just had the one recent visit in July 2016.  Further, the claimant also told Dr. Kraft at this last visit in July 2016 that he is not taking psychiatric medications and does not feel that he needs them, which is internally inconsistent with Dr. Kraft's limitations for the claimant.  For these reasons, the majority of this opinion by Dr. Kraft is given reduced weight.  [¶]  However, Dr. Kraft's opinion that the claimant is seriously limited but not precluded from working in coordination with others, getting along with coworkers or peers, interacting appropriately with the general public, or maintaining socially appropriate behavior, is consistent with the record as a whole, as well as with the claimant's activities of daily living, and is given moderate weight.

(Id. at 28.)

Plaintiff contends that Dr. Kraft's opinion was not inconsistent with the record as a whole. Oscar S. concedes that his reports that he was able to get along with others and talk with neighbors and friends on a daily basis may appear to be inconsistent with Dr. Kraft's 2015 opinion that Plaintiff could not meet competitive standards in the ability to work in coordination with others. (Pl.'s Mot. Summ. J. 13, ECF No. 10.) However, he argues that Dr. Kraft's finding is consistent with Plaintiff's testimony that he experienced paranoia around strangers. (Id.) He contends that even though he is able to get along with friends and neighbors, this did not extend to workplace, as evidenced by his recent loss of a job due to fighting with a woman he worked with. (Id. [citing Admin. R. at 556].) Plaintiff also takes issue with the ALJ's discounting of Dr. Kraft's 2016 opinion on the basis that he was no longer taking psychiatric medications. (Id.) He argues that "a patient's belief that they no longer need medication does not mean that they no longer suffer from issues that a trained psychiatrist would be able to observe[.]" (Id.) Finally, Oscar S. contends that the improvement of his mental health symptoms with medication was not inconsistent with Dr. Kraft's opinions, because "[i]mprovement is not equivalent to being unimpaired." (Pl.'s Reply at 2, ECF No. 14.)

Defendant argues that the ALJ reasonably questioned the frequency of Plaintiff's visits with Dr. Kraft. (Def.'s Cross-Mot. Summ. J. Attach. #1 Mem. Supp. 8, ECF No. 12.) She also contends that Dr. Kraft's opinion was inconsistent with the record as a whole, including with his own treatment notes, as well as with the contrary evaluations from Dr. Daigle, the consultative psychiatrist, and the state agency consultants. (Id.) Defendant observes that the medical evidence reflected that Plaintiff's mental condition improved with therapy and treatment. (Id. at 8-9.) Defendant also notes that in the days and months leading up to Dr. Kraft's "very negative" assessment of Plaintiff's ability to work in 2015, Dr. Kraft found that Plaintiff's depression and paranoia were under reasonable control, and that he no longer had anger or mood instability nor problems with thought processes. (Id. at 9 [citing Admin. R. at 445, 528].) Defendant contends that in

light of Plaintiff's representation to Dr. Kraft in July 2016 that he had stopped his medications for three months and was doing well, it was proper for the ALJ to question the basis of Dr. Kraft's contemporaneous restrictive assessment of Plaintiff's ability to perform mental work activities. (Id. at 10.)  In response to Plaintiff's argument that treatment notes indicating improvement were not inconsistent with Dr. Kraft's opinion, Defendant counters that "[t]he notes indicating that Plaintiff's symptoms were amenable to good control directly undercut Dr. Kraft's assessment that Plaintiff's mental condition would cause him to miss significant amounts of work and that he was quite limited in most mental functional areas." (Def. Surreply 2, ECF No. 15.)

As set forth above, Dr. Daigle, the examining psychiatrist, found in February 2015 that Plaintiff had at most slight limitations in his mental functional capacity, and had a moderate limitation only in his ability to adapt to the stresses common to a normal work environment. (Admin. R. at 490, 494-95.)  Dr. Daigle indicated that Plaintiff's depression and anxiety had been "largely relieved" with psychotherapy and psychopharmacologic treatment to the point where he was seeking active reemployment. (Id. at 494.)  The state agency physicians, Patrice G. Solomon, Ph.D. and J. Schnitzler, D.O., found that although Plaintiff had some mild to moderate limitations in his mental residual functional capacity, his mental condition was not disabling. (Id. at 70-72, 98-99, 101-02.)  Because Dr. Kraft's opinions were contradicted by medical evidence in the record, as with Dr. Troia-Cancio's opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence in order to discount or reject his opinions. See Batson, 359 F.3d at 1195; Bayliss, 427 F.3d at 1216.

Again, in providing specific and legitimate reasons to reject a treating physician's opinion, an ALJ should provide a thorough, detailed summary of the facts and clinical evidence, state his interpretation thereof, and make findings. Garrison, 759 F.3d at 1012. With respect to Plaintiff's mental impairments, the ALJ summarized and interpreted the medical records and opinions of Plaintiff's treating physician, Dr. Kraft, the consultative examiner, Dr. Daigle, and the two state agency medical consultants, Drs. Solomon and

Schnitzler. (Admin. R. at 23-25, 27-29.) After setting forth her thorough review of the evidence in the record, the ALJ set forth three reasons for discounting Dr. Kraft's 2015 opinion: Dr. Kraft saw Plaintiff less than once per month over the course of a two year period, Dr. Kraft's opinion was inconsistent with the record as a whole, and Dr. Kraft's opinion was internally inconsistent. (Id. at 27.) Importantly, "[a]lthough a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." Tonapetyan, 242 F.3d at 1149. "When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict." Matney, 981 F.2d at 1019.

Here, the ALJ found that Dr. Kraft's 2015 opinion was inconsistent with the record as a whole. Specifically, ALJ French found Plaintiff's testimony that he does not have any problems getting along with others and talks to friends and neighbors on a daily basis, (see Admin. R. at 55-56), to be inconsistent with Dr. Kraft's opinion that Plaintiff could not meet competitive standards in his social interactions at work, (id. at 27). The record contains other instances of Plaintiff getting along well with others. (See, e.g., id. at 370 ("Plaintiff's support network includes friends."); id. at 409 ("[Patient] states his friends tell him he is doing well."); id. at 492 ("He has several close friends and they enjoy coffee together.").) The record also establishes that Plaintiff's mental impairments improved with medication. (See, e.g., id. at 393 ("Paranoia much improved – not totally gone but manageable."); id. at 409 ("Managing his depression, paranoia, and anxiety well.").) The ALJ acknowledged and accounted for Plaintiff's functional limitations by limiting the type of work he could perform to simple tasks and instructions, not with the general public, not closely with coworkers as part of a team, and in a workplace with few changes. (Id. at 22.) Based on the record as a whole, the ALJ could properly find that Dr. Kraft's opinion that Oscar S. could not meet competitive standards in so many of the mental abilities and aptitudes needed to do unskilled work, (see id. at 581-82), to be unsupported by the record. The Court finds this constituted a specific and legitimate

reason for the ALJ to discount Dr. Kraft's 2015 opinion. See Tonapetyan, 242 F.3d at 1149; Batson, 359 F.3d at 1195.

By the time of his May 2015 report, Dr. Kraft had seen Plaintiff for a sufficient number of visits, thirteen, to have established a "longitudinal picture" of Oscar S.'s impairment. See 20 C.F.R. § 404.1527(c)(2)(i). The Court thus does not agree with the ALJ's characterization of the treatment relationship between Plaintiff and Dr. Kraft as being insufficient to allow Dr. Kraft to have formulated a longitudinal picture of Plaintiff's impairments. (See Admin. R. at 27.) Additionally, although internal inconsistencies within a medical opinion may constitute a specific and legitimate reason to give a physician's opinion reduced weight, (see Norris, 160 F. Supp. 3d at 1270), the ALJ here did not specify how Dr. Kraft's 2015 opinion was internally inconsistent, and thus the Court cannot consider this to be a specific and legitimate reason to discount the opinion. Nonetheless, the Court finds the ALJ could properly give Dr. Kraft's opinion lesser weight based upon its inconsistency with the record as a whole, following her detailed and thorough summary of the facts and conflicting clinical evidence. See Garrison, 759 F.3d at 1012 (quotations and citation omitted).

Finally, the ALJ articulated three reasons for discounting Dr. Kraft's 2016 report: it was inconsistent with the record as a whole, it was internally inconsistent, and Dr. Kraft had not seen Plaintiff for a period of a year, other than a visit on the date of the writing of the report. (Admin. R. at 27-28.) For the same reasons discussed above, the opinion's inconsistency with the record as a whole could alone serve as a specific and legitimate reason to discount it. The Court thus finds the ALJ properly assigned lesser weight to the majority of Dr. Kraft's 2016 opinion.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment and/or Remand should be **DENIED** and Defendant's Cross-Motion for Summary Judgment should be **GRANTED**.

This Report and Recommendation will be submitted to the United States District

18cv1152-AJB(RBB)

Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).
Any party may file written objections with the Court and serve a copy on all parties on or
before July 11, 2019.  The document should be captioned "Objections to Report and
Recommendation."  Any reply to the objections shall be served and filed on or before
July 25, 2019.  The parties are advised that failure to file objections within the specified
time may waive the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d
1153 (9th Cir. 1991).

Dated:  June 20, 2019

Hon. Ruben B. Brooks
United States Magistrate Judge